Joseph Aguilar GAITAN, Appellant,

v.

UNITED STATES of America, Appellee.

Dolores Mary GAITAN, Appellant,

v.

UNITED STATES of America, Appellee.

Aniseto SILVA, Appellant,

v.

UNITED STATES of America, Appellee.

Joe Anthony EMMETT, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 5709-5711, 5728.

United States Court of Appeals
Tenth Circuit.

Jan. 23, 1958.

Rehearing Denied Feb. 8, 1958.
Writ of Certiorari Denied April 28, 1958.
See 78 S.Ct. 779.

Walter L. Gerash and Francis P. O'-Neill, Denver, Colo., for appellants, Joseph Aguilar Gaitan and Dolores Mary Gaitan and Aniseto Silva.

Blair J. Lawther, Denver, Colo., filed a brief for appellant, Joe Anthony Emmett.

John S. Pfeiffer, Asst. U. S. Atty., Denver, Colo., (Donald E. Kelley, U. S. Atty., Denver, Colo., with him on the brief), for appellee.

Before BRATTON and PICKETT, Circuit Judges, and RICE, District Judge.

RICE, District Judge.

The appellants, defendants in the trial court, and hereinafter referred to as defendants, were charged by indictment with violations of the narcotics laws relating to marihuana. All defendants were charged with conspiracy to transfer marihuana in violation of 26 U.S.C. § 4742(a). Joseph Aguilar Gaitan and Dolores Mary Gaitan, husband and wife, hereinafter referred to as the Gaitans, were jointly charged in Counts 4 and 5 with possession and concealment of marihuana in violation of 26 U.S.C. §§ 4744 (a) (1) and 4744(a) (2). Aniseto Silva and Joe Anthony Emmett, hereinafter referred to as Silva and Emmett, were jointly charged in Counts 2 and 3 with transporting and transferring marihuana in violation of 26 U.S.C. §§ 4744 (a) (2) and 4742(a). Each defendant was convicted as charged. Joseph Gaitan received a ten-year sentence. Each of the other defendants received a five-year sentence.

The Gaitans and Silva joined in filing, prior to trial, a motion to suppress evidence. The Gaitans filed separate but identical affidavits in support of the motion, asking that the search of their apartment be declared unreasonable, illegal, and void and that the United States Attorney be precluded from using the evidence obtained by the search against them, and alleging generally that their dwelling place was "forcibly and illegally broken into and illegally entered"; that no warrant of arrest was served or displayed by the officers, either State or Federal; that "no search warrant was served or displayed by the State or Federal officers and that the search was a violation of the Fourth Amendment." Silva filed no affidavit but apparently relies upon the affidavits of the Gaitans.

Emmett, by his attorney, filed a motion to suppress for use as evidence "anything obtained on or about the 5th day of February, 1957, at the premises known and numbered as 1831 Williams Street, City and County of Denver in the District of Colorado, which was unlawfully seized and taken from the defendants Joseph Aguilar Gaitan and Dolores Mary Gaitan by a deputy of the United States Marshal or an agent of the Federal Bureau of Investigation * * *." Emmett further charged that the property was seized under the authority and control of the Federal Government. Emmett's motion was not supported by affidavit. None of the defendants asserted ownership or possession of the property alleged to have been illegally seized.

The property seized was a 5-pound 14-ounce bag of marihuana found concealed in the Gaitans' apartment. A tobacco can of marihuana was found on and seized from the person of Emmett after his arrest at the entrance of the apartment building in which the Gaitans lived. On the hearing of the motion to suppress evidence, the defendants, assuming the burden of proof, endeavored to establish that the search and seizure were participated in by Federal officers. On the other hand, it was the contention of the Government that the search and seizure were conducted entirely by State officers, members of the police force of the City and County of Denver, without any participation on the part of the Federal officers. There was never any contention that the State officers had a warrant for the arrest of any of the defendants or had a search warrant authorizing them to search the apartment in which the Gaitans lived, or the person of any defendant. The evidence clearly establishes that the police officers, after hav-

ing had the apartment under surveillance for several hours, entered the apartment building at approximately 8:30 p. m., and arrested Silva and Emmett in the hallway leading to the apartment occupied by the Gaitans; that a tin of marihuana was found and seized from the person of Emmett, and that a bag containing 5 pounds 14 ounces of marihuana was found and seized as a result of a search of the Gaitan apartment.

After the tin of marihuana had been seized and the bag containing 5 pounds 14 ounces of marihuana had been found and seized, one of the police officers called the Federal narcotics agents, and at approximately 9:30 p. m. two narcotics agents came to the apartment. Officer Nelson, Captain of Police, stated in his testimony that before the Federal officers arrived, "our investigation was all complete." The Federal officers, upon arrival, saw the situation as it existed. They saw the marihuana that had been seized, and thereafter accompanied the local officers and the defendants to police headquarters. Defendants were lodged in the city jail over night under authority of the City and County of Denver. Habeas corpus proceedings were begun by some of the defendants in the State Court and hearing for others was set for an early date. Thereupon, the Captain of the State police made a change charge slip and placed a hold order for the Federal narcotics agents. This change was made, according to the officer's testimony, several days later. The police officers retained custody of the marihuana, and at the time of the hearing on the motions had custody of the marihuana.

■ The case was tried by the Government on the theory that the search and seizure were conducted by State officers without participation by the Federal officers. The defendants contended in the trial court that there was participation by Federal officers, and by reason thereof the evidence secured as a result was inadmissible. Attorneys for the defendants concede that evidence obtained illegally by State officers may be used in a Federal court prosecution, and the attorneys for the Government concede that evidence obtained by illegal search by Federal officers or by State officers and Federal officers may not be used in Federal court.

While opposing counsel agree upon the basic legal questions involved, they do not agree upon the application of the facts; and, ultimately, the attorneys for both defendants and the Government are confronted with and find comfort in the language of Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819.

Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 249, 71 L.Ed. 520, preceded Lustig by twenty-two years. In Byars, the Court said: "While it is true that the mere participation in a state search of one who is a federal officer does not render it a federal undertaking, the court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods." Byars further held: "We do not question the right of the federal government to avail itself of evidence improperly seized by state officers operating entirely upon their own account."

In Lustig, [338 U.S. 74, 69 S.Ct. 1374] the Court, in discussing the Byars case said: "The crux of that doctrine is that a search is a search by a federal official if he had a hand in it; it is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter. The decisive factor in determining the applicability of the Byars case is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means."

At the conclusion of the hearing on the motions to suppress, the trial court overruled the motions and made the following statement: "In this case, the whole transaction was completed long before there was any Federal Agent ever told about the matter at all. And there was no selection of evidence or no going

over the evidence except that Mr. Gress did look at the marihuana, just visually inspected it according to all the testimony and then the next day or some day following, was when it was turned over by another officer, by Captain Nelson, to the Narcotics Bureau."

Again, the trial court said: "The basic question is whether there was sufficient Federal participation to bring the rule within the Federal Rule or whether the search by the State officers is subject to examination on that basis."

Repeatedly, in ruling on the motion to suppress, the Court stated that the search and seizure were made without the participation or involvement of any Federal officer.

█ We have carefully read the entire record. There is no material conflict as to what actually occurred and as to when it occurred. We agree with the trial court's summary of the facts and in its conclusion. We share the view of the trial court that the decisive factor necessary to show participation of Federal officials in the search and seizure is lacking.

█ There remains for consideration a second contention of the defendants and that is alleged misconduct of the Government attorney, which they assert was prejudicial to the rights of the defendants and by reason thereof they were entitled to a mistrial. Again, there is no disagreement as to what actually occurred. The attorney for the Government called as a Government witness the lieutenant in charge of the Bureau of Identification of the Police Department of the City and County of Denver and asked him if he had certain records; and when the lieutenant responded that he did have the records, he was asked to produce them. The records were the police records that had been made at the time the defendants were lodged in jail. There were four exhibits—one for each defendant. When the records were produced, the attorney handed them to the reporter to be marked for identification. Immediately, the attorneys for the defendant approached the bench and asked

the Court to declare a mistrial. The court recessed, and in chambers the matter was fully presented to the trial court. The attorneys for the defendants stated that they believed that the jury had seen or could have seen the exhibits and that, as a result, might be prejudiced against the defendants. The Court did not share in the belief that the jury had seen the exhibits or observed them to the extent that they knew the contents thereof. The Court agreed that the exhibits were not proper evidence, particularly at the time they were identified, and directed that they not be returned to the courtroom and denied the motion for mistrial. The trial court was in much better position to observe and evaluate the effect of what had occurred, and we accept his conclusion that the identification of the exhibits under the circumstances, was not sufficient to require a mistrial.

Judgment of the trial court is affirmed.