Samuel J. HANNA, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14462.

United States Court of Appeals
District of Columbia Circuit.

Argued June 24, 1958.

Decided Oct. 2, 1958.

Petition for Rehearing In Banc
Denied Oct. 27, 1958.

Mr. Frederick A. Ballard, Washington, D. C. (appointed by this court), with whom Mr. Eugene B. Thomas, Jr., Washington, D. C., was on the brief, for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher and Thomas A. Flannery, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Circuit Judge, HASTIE, Circuit Judge, United States Court of Appeals for the Third Circuit,* and DANAHER, Circuit Judge.

HASTIE, Circuit Judge.

Convicted of housebreaking and larceny in this District, the appellant Hanna grounds this appeal on the refusal of the District Court to suppress certain evi-

---

* Sitting by designation pursuant to the provisions of Sec. 291(a), Title 28 U.S.Code.

dence; to wit, a quantity of money seized by Maryland police officers in a predawn search of a motel room occupied by appellant. Part of the hoard, paper money, was found under the sheets of the bed occupied by Hanna. The rest of the money, in coins, was found in a bag under his bed.

The search was admittedly without warrant. We need not examine most areas of the large body of authoritative rulings limiting very strictly the circumstances in which a search of premises without a warrant may constitutionally be made. For the only justification the prosecution urges for the search in this case is that it was a proper incident of a lawful arrest.

These are the circumstances of the arrest and search. Shortly after 4 a. m. state police officers came to a Maryland motel in response to a call from the motel keeper. When they arrived they were told that about 4 a. m. a man had rented two communicating rooms or cabins, ostensibly for himself and his invalid wife; that the motel keeper had not seen the woman but had seen two men entering the cabin with an overnight bag and what looked like a money bag. The motel keeper also related that he had looked through a window into one room and had observed the men sitting on the bed counting money. Thus informed, the police approached the rooms in question and found them dark and quiet. They knocked at the outer door which was opened from within by the occupant whom they confronted with a shot gun. As they entered they recognized the occupant as Robert Judd, a person with past convictions of theft who was then at large in Maryland on bond and was being sought by his bondsman because of delinquency in payment of the bond premium. Immediately upon thus recognizing Judd, the police placed him under arrest and proceeded to search the room he was occupying and the adjoining room in which appellant had retired. Actually, the officers pulled the cover from appellant, required him to get out of bed and

thereafter found the money in and under the bed.

In this record, the interrogation of Sergeant Bond, the arresting officer and apparently the officer in charge of the police detail, reveals great uncertainty on his part as to the reason and basis for arresting Judd. Sergeant Bond was asked whether he intended to make an arrest when he knocked on the cabin door. He replied, "I did not know what I thought because I did not know what to expect." In any event, the door was opened by a man whom the sergeant recognized as one who had been convicted of theft and was even then at large on bail. At that point and without more, the officer says he decided to make the arrest, and did so. In these circumstances, it is not surprising that the sergeant was vague and vacillating as to the reason for this arrest. At one point he stated that he arrested Judd for investigation in the light of the report he had received from the motel keeper. At another point he varied this by saying: "I arrested him for having in his possession narcotics and money and held him for investigation." Of course, this could not have been true because the contraband was discovered after and not before the arrest. Again, the officer testified that he was influenced by recognizing Judd as a person on bail whose bondsman had complained of nonpayment of the bond premium. In this connection the sergeant made the puzzling statement, "I placed him under arrest because the fellow had been placed under arrest in our jurisdiction."

 Maryland recognizes and enforces the familiar rule that, where no crime has been committed in his presence, a peace officer may make an arrest without warrant only on a felony charge, and then only on probable cause in the sense of reasonable ground for believing that the person arrested has committed the felony charged. Edwards v. State, 1950, 196 Md. 233, 76 A.2d 132; Freedman v. State, 1950, 195 Md. 275, 73 A.2d 476. Sergeant Bond's own testimony cannot reasonably be said to disclose

probable cause for arresting Judd on a felony charge. An arguable case might have been made in support of the arrest had the police been advised of a recent theft and alerted to be on the lookout for the suspected perpetrator. At least they would then have had some affirmative indication that the motel keeper's report might be related to a recent crime. Cf. Edward v. State, supra. But not until many hours later did the Maryland police learn of the earlier burglary in the District of Columbia, the proceeds of which constituted the evidence here sought to be suppressed. When the arrest was made the police had nothing significant upon which to go except Judd's known criminal record and the report that he had taken a money bag into the motel on registering very late at night. These circumstances aroused suspicion, and properly so. They may well have justified questioning and surveillance, but they certainly fell short of providing probable cause for a felony arrest at that point. We think it rather clear from what the officers knew and from Sergeant Bond's testimony that a decision was made to arrest on suspicion first, and then to see what could be found which would establish probable cause for detention on a felony charge.

In these circumstances the arrest could not provide any justification for the search which followed.[1] The entire nighttime search without warrant, including the excursion into the bedroom which yielded the money in controversy, must therefore be viewed as unreasonable and illegal. It violated Maryland law and, as will appear later, an unreasonable search by state officers also violates the Fourth Amendment as incorporated into the Fourteenth.

This brings us to a serious and important issue of law. May articles obtained by an unreasonable search and seizure by state officers, without any involvement of federal officers, be introduced in evidence in a court of the District of Columbia, or in any federal court?

We find it useful to trace the history of this question in the Supreme Court and, to some extent, in the Courts of Appeals. More than forty years ago, in Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, the Supreme Court reviewed a federal conviction said to have been based upon evidence obtained in two unauthorized and unreasonable searches and seizures, one by federal officers and the other by state officers. The Court held that the refusal of the trial court on appropriate motion to return the articles seized in the search by federal officers was a denial of a right secured by the Fourth Amendment and, therefore, that the subsequent admission of those articles in evidence was reversible error. However, the Court ruled that the equivalent search and seizure by state officers was not a violation of any right secured by the Constitution.[2] Accordingly, no error was found in the introduction of articles thus seized in evidence.

More than thirty years later, but with the Weeks doctrine still unquestioned law,[3] this court decided, properly citing and relying upon Weeks, that articles

1. While our conclusion that the arrest was illegal is decisive, it seems appropriate to note in addition that, even if we should assume that the detention of Judd was justified, there would remain a serious question whether the circumstances of this arrest justified the ensuing exploratory search which carried the officers through a door, into an adjoining bedroom and into and under the bed in which another person had retired. Cf. United States v. Lefkowitz, 1932, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877; Go-Bart Importing Co. v. United States, 1931, 282 U.S. 344, 51 S.Ct. 153, 75 L. Ed. 374; Johnson v. State, 1949, 193 Md. 136, 66 A.2d 504.

2. A month earlier the Court had made an almost casual ruling to the same effect in different context. National Safe Deposit Co. v. Stead, 1914, 232 U.S. 58, 71, 34 S.Ct. 209, 58 L.Ed. 504.

3. Cf. Feldman v. United States, 1944, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408; Byars v. United States, 1927, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520.

seized by New York police officers in the course of an unreasonable search were admissible in evidence in a trial in the District of Columbia. Shelton v. United States, 1948, 83 U.S.App.D.C. 257, 169 F.2d 665, certiorari denied 335 U.S. 834, 69 S.Ct. 24, 93 L.Ed. 387.

Then came Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782. There the Supreme Court ruled explicitly, for the first time and contrary to the Weeks ruling on the point, that an unreasonable search and seizure by a state officer violates the Constitution because the Fourth Amendment prohibition of unreasonable searches and seizures is to be read into the Fourteenth Amendment as a requirement of due process of law. In the Court's words: "The security of one's privacy against arbitrary intrusion by the police —which is at the core of the Fourth Amendment—is basic to a free society. It is therefore implicit in 'the concept of ordered liberty' and as such enforceable against the States through the Due Process Clauses." 338 U.S. at pages 27–28, 69 S.Ct. at page 1361. The Court next reasoned that in enforcing this constitutional prohibition the states are not required to forbid the use of wrongfully seized items in evidence, though the use of evidence obtained by violation of the Fourth Amendment is forbidden in the federal courts under the Weeks rule. The states may content themselves with other sanctions against unreasonable searches and seizures. So, the precise decision in the Wolf case was that a state need not exclude evidence obtained by unconstitutional means from its judicial proceedings. But, in ruling that the Fourth Amendment prohibition operates through the Fourteenth to make unreasonable state searches unconstitutional, the Court in Wolf overruled the very constitutional pronouncement and holding upon which the Weeks decision, and our Shelton decision following Weeks, had predicated the admissibility of state seized evidence in a federal trial.

Oddly, even since the Wolf decision several Court of Appeals have followed Weeks as to the admissibility of evidence obtained by state officers in federal trials. on the no longer tenable theory that the Constitution does not prohibit unreasonable searches and seizures by state officers. E. g., Serio v. United States, 5 Cir., 1953, 203 F.2d 576, 578, certiorari denied 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 391; United States v. Moses, 7 Cir., 1956, 234 F.2d 124, 125; Gallegos v. United States, 10 Cir., 1956, 237 F.2d 694, 696. Overlooking the fact that since the Wolf case an unreasonable state seizure must be recognized as a violation of the Constitution, these courts have failed to come to grips with the problem whether there should be in the federal courts a comprehensive rule that evidence obtained by invasion of a constitutional right, whether by a state or a federal officer, is inadmissible. Cf. Jones v. United States, 8 Cir., 1954, 217 F.2d 381.

On the other hand, since the Wolf case Justices of the Supreme Court have repeatedly recognized that it is no longer possible to accept the Weeks case as settling this problem of federal use of evidence procured by unreasonable state search. Most recently, Mr. Chief Justice Warren has noted, ignoring the old Weeks ruling on the question, that "it has remained an open question in this Court whether evidence obtained solely by state agents in an illegal search may be admissible in federal court despite the Fourth Amendment." Benanti v. United States, 1957, 355 U.S. 96, 102 note 10, 78 S.Ct. 155, 158, 2 L.Ed.2d 126. Mr. Justice Frankfurter too has recognized the question as open, saying that "where there is participation on the part of federal officers it is not necessary to consider what would be the result if the search had been conducted entirely by State officers." Lustig v. United States, 1949, 338 U.S. 74, 79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819.

Even more striking are expressions of opinion by three other Justices. Mr. Justice Douglas, dissenting from the ultimate holding in Wolf v. People of State of Colorado, supra, tersely stated his conclusion that state and federal courts should be required to exclude evidence

obtained by either state or federal officers through an unreasonable search. 338 U.S. at page 40, 69 S.Ct. at page 1367. On a subsequent occasion he reaffirmed his conviction that "we should be alert to see that no *unconstitutional* evidence is used to convict any person in America." See Irvine v. People of State of California, 1954, 347 U.S. 128, 149, 152, 74 S.Ct. 381, 394, 98 L.Ed. 561.[4]

Mr. Justice Clark has gone just as far. Only stare decisis has persuaded him to support the ultimate Wolf conclusion that a state court may use unconstitutionally obtained evidence. See Clark, J., concurring in Irvine v. People of State of California, supra, 347 U.S. at page 138, 74 S.Ct. at page 386. In the federal courts he would apply the basic generalization of the Weeks case, "that evidence obtained in violation of rights protected by the Fourth Amendment to the Federal Constitution must be excluded in federal criminal prosecutions." See Breithaupt v. Abram, 1957, 352 U.S. 432, 434, 77 S.Ct. 408, 409, 1 L.Ed.2d 448. And in the light of his dissatisfaction with the ultimate Wolf holding it is impossible to believe that he would restrict this considered generalization to cases where the violation of the Constitution has been by federal officers.

Finally, Mr. Justice Harlan has put his view of the impact of Wolf on Weeks quite succinctly:

> " * * * the only difference I can see between the Wolf decision and Weeks v. United States, * * * excluding in federal criminal trials evidence obtained in contravention of the Fourth Amendment, is the difference between state and federal courts; in each case, the substance of the constitutional command is the same, but the nature of enforcement varies with the forum." See dissenting opinion in Rea v. United States, 1956, 350 U.S. 214, 218, 220, 76 S.Ct. 292, 296, 100 L.Ed. 233.

The "constitutional command", if we understand Justice Harlan correctly, enjoins federal and state officers alike from unreasonable searches and seizures. Thus, the Justice seems to be saying that the Weeks case requires one type of enforcement of this comprehensive command in federal courts, while the Wolf case permits less drastic enforcement in state courts.

On the other hand, one Justice seems to have committed himself since and despite the Wolf case to a continuing recognition in federal trials of the original Weeks distinction between federal and state seizures. We think this is the necessary meaning of Mr. Justice Burton's concurrence in the dissent in Lustig v. United States, supra, 338 U.S. at page 80, 69 S.Ct. at page 1374, although we are not unmindful that he joined later in Mr. Justice Harlan's dissent in the Rea case, discussed above. In any event, no other Justice now in active commission seems to have approved the Weeks distinction since the Wolf decision.

In cumulative effect these several pronouncements by so many Justices of the present Court support the rational argument that the Weeks and the Wolf decisions, considered together, make all evidence obtained by unconstitutional search and seizure unacceptable in federal courts. At very least it seems clear that this is a position toward which several Justices are strongly inclined, with one Justice apparently in disagreement and others indicating no more than that they regard the question as open. Certainly, neither the Weeks holding as to state-seized evidence nor our own Shelton decision can properly be regarded as binding precedents in the light of the subsequent Wolf ruling and the cited indications of the present views of so many justices.

4. Mr. Justice Douglas also joined in a concurring opinion in Lustig v. United States, supra, preferring to base that decision on the broad proposition that "the important consideration is the presence of an illegal search. Whether state or federal officials did the searching is of no consequence to the defendant, and it should make no difference to us." 338 U.S. at page 80, 69 S.Ct. at page 1375.

■ On principle and as a matter of sound policy in the administration of judicial proceedings in the District of Columbia we think all evidence obtained by violation of the Constitution should be excluded. In this area, as Mr. Justice Jackson has reminded us, decision "whether to exclude illegally obtained evidence in federal trials is left largely to our discretion, for admissibility of evidence is governed 'by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.' Fed.Rules Crim.Proc., 26." See Irvine v. People of State of California, 1954, 347 U.S. 128, 134–135, 74 S.Ct. 381, 384, 98 L.Ed. 561. What then should be the controlling considerations when unconstitutionally obtained evidence is offered in a court of the United States? One influential consideration is that which moved Justice Holmes and Justice Brandeis in their celebrated Olmstead dissents. Mr. Justice Holmes put it this way:

"* * * government ought not to use evidence obtained and only obtainable by a criminal act. * * * I think it a less evil that some criminals should escape than that the government should play an ignoble part." Olmstead v. United States, 1928, 277 U.S. 438, 469, 470, 48 S.Ct. 564, 575, 72 L.Ed. 944.

This concern with the integrity of the judicial process must be most serious when the evidence has been obtained by a violation of the Constitution itself. The effectiveness of courts must always depend in large measure upon the respect which their processes command by reason of the integrity they reveal. From that point of view the courts of the United States, the ultimate guardians of the Constitution, cannot afford to play the "ignoble part" by themselves permitting the use of unconstitutionally obtained evidence, solacing and absolving themselves by deploring the unconstitutional seizure and pointing out that in some other proceeding sanctions can or should be imposed against the violation of our fundamental law. This very point was made in the Weeks case with reference to evidence which federal officers had obtained by unreasonable search:

"The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures * * * should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights." 232 U.S. at page 392, 34 S.Ct. at page 344.

But the Wolf case has made this reasoning equally applicable to the now equally unconstitutional seizures by state officers.

Beyond the issue of judicial integrity, we should not assume that the refusal of the federal courts to permit the use of improperly obtained evidence will have no effect in persuading state as well as federal officers to follow constitutional methods and procedures in obtaining evidence. In the Weeks case the Supreme Court went so far as to say that if articles can be seized illegally by federal officers "and held and used in evidence against a citizen accused of an offense, the protection of the 4th Amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution." It cannot rationally be argued that the constitutional protection is so gravely impaired by using such evidence in federal courts when a federal officer has violated the Fourth Amendment, but that there is no significant impairment when it is a state officer who has been guilty of an equivalent violation of the Fourteenth Amendment. Perhaps the sanction of excluding such evidence from federal trials has a greater deterrent effect upon federal officers than upon state officers. But there is no calculus to measure such a difference, nor is it the kind of difference which war-

rants opposite conclusions as to the admissibility of the evidence.

The money in controversy should not have been admitted in evidence against appellant. He is entitled to a new trial at which this evidence shall be suppressed.

Reversed and remanded for proceedings consistent with this opinion.