**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Carlos Manuel CAMARA, Defendant-Appellant.**

**No. 12615.**

United States Court of Appeals Seventh Circuit.

Nov. 5, 1959.

Rehearing Denied Nov. 30, 1959.

Christ Alexopoulos, Charles J. Kersten, Milwaukee, Wis., for appellant.

Edward G. Minor, U. S. Atty., Matthew M. Corry, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before MAJOR, SCHNACKENBERG and PARKINSON, Circuit Judges.

MAJOR, Circuit Judge.

An indictment charged that defendant (appellant) "unlawfully purchased and had in his possession narcotic drugs not contained in the original stamped package or from the original stamped package, to-wit, 2.5 grains of heroin, in violation of Secs. 4704(a) and 7237 of Internal Revenue Code of 1954; 26 U.S.C. 4704(a); 7237 * * *." Defendant was tried by the court without a jury,

found guilty and judgment was entered, from which defendant appeals.

The case has traveled a long and tortuous route. For many months it was before Judge Grubb, who finally disqualified himself, and it was taken over and tried by Judge Tehan. From the beginning defendant was represented by counsel appointed by Judge Grubb and, when Judge Tehan took over, additional counsel was appointed. It is amazing that such a voluminous record as is presented here could have been made. Many hearings were conducted by Judge Grubb on every conceivable kind of motion.

Most of the contentions advanced in the trial court and renewed here merit neither statement nor discussion. The principal issue with which we need be concerned is whether the District Court erred in its denial of defendant's motion to suppress evidence, on the ground that it was obtained as a result of a search and seizure made in violation of defendant's constitutional rights. Another issue arises from defendant's contention that there was no direct proof that the package containing heroin which was taken from defendant did not bear an original stamp.

On March 15, 1958, officers Brown and Gumm, detectives of the city of Milwaukee, Wisconsin, assigned to its vice squad, entered the premises at 514 East Knapp Street in that city, where defendant had arrived that day for a visit with his uncle who resided there. Defendant was arrested in the bathroom by these city officials, who searched and took from him a small package containing heroin. Both the arrest and the search were made without a warrant. Previously thereto, on March 10, 1958, Brown incidentally met an F.B.I. agent who informed him of certain narcotic activities at the above named address and that a group of people who used narcotics were frequenting the place. This information furnished by the F.B.I. agent constituted the sole connection which he or any other federal agent had with the arrest and search. Moreover, the city detectives had long before had the premises under surveillance.

State charges were preferred against defendant and, after a hearing in a state court, defendant's motion to suppress the evidence was allowed, on the ground that the arrest as well as the search and seizure were illegal. The evidence obtained by the city detectives was turned over to the proper officials of the federal government, presented to the Grand Jury and the indictment in the instant case followed. Defendant goes into great detail in a statement of facts relative to the state court proceedings, upon which many of his frivolous motions were based in the trial court and which we think are wholly immaterial here.

The brief statement of facts which we have made is sufficient because the trial court found, as had the state court previously, that defendant's arrest, as well as the search and seizure by state officers, violated his constitutional rights. The trial court found that no federal officer was present at the time of the search and seizure and arrest of defendant made by the city detectives, that there was no assistance, cooperation or collaboration relative thereto by any federal official. This finding is abundantly supported by the record and we accept it. The most that can be claimed is that one of the city detectives received from an F.B.I. agent in a casual manner certain information which, in the main, the city officer already possessed. More than that, this information related to certain premises in which defendant did not at the time reside; in fact, he did not arrive in Milwaukee until five days later. Defendant also attempted to show, and still contends here, that there was a pattern, practice or custom by which city officials of Milwaukee would make unreasonable searches and seizures for the purpose of obtaining evidence to be turned over to the federal officials. Not only was there a failure of proof on this score but the contention was completely demolished.

■ This brings us to the important question as to whether evidence illegally obtained by state officers acting on their own may be utilized by the federal government in a prosecution, in other words, whether the Fourth Amendment to the United States Constitution affords protection against the illegal acts of state officials.

Judge Tehan, after a rather protracted hearing, denied the motion to suppress, relying upon the rule announced in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, and applied by this court in United States v. Moses, 7 Cir., 234 F.2d 124. The rule has been followed by this court in numerous cases other than Moses, including United States v. Stirsman, 7 Cir., 212 F.2d 900, 905, and United States v. White, 7 Cir., 228 F.2d 832, 835. It has also been followed in other Circuits without exception, so far as we are aware, until a recent decision by the Court of Appeals, District of Columbia Circuit, Hanna v. United States, 104 U.S.App.D.C. 205, 260 F.2d 723. That court squarely held that property obtained by an unreasonable search and seizure by state officers, even though there was no involvement of federal officers, was, under the Fourth Amendment, inadmissible in a federal court.

The opinion in the Hanna case is impressive, particularly that portion which the court designates as the Supreme Court history of the question. The court does not hold that the rule has been changed but reasons that it is an open question in the Supreme Court. After noting the position of individual members of that court, it appears to be the rationale that the Supreme Court, when it again considers the question, will decide differently from what it has previously held in a long line of decisions. It seems to us that the court in Hanna bases its decision upon what that court thinks the rule should be rather than what it is.

Other courts have reviewed the Supreme Court decisions on the issue, perhaps not in as great detail as the court did in Hanna, and have reached a different result. See particularly Jones v. United States, 8 Cir., 217 F.2d 381; Gaitan v. United States, 10 Cir., 252 F.2d 256, and Graham v. United States, 6 Cir., 257 F.2d 724. Other recent cases in which the Weeks rule was followed, other than those of this Circuit heretofore cited, are Costello v. United States, 8 Cir., 255 F.2d 389, and Fredericks v. United States, 5 Cir., 208 F.2d 712. It is of some significance that applications for certiorari were made and denied in Fredericks, 347 U.S. 1019, 74 S.Ct. 875, 98 L.Ed. 1140, and in Gaitan, 356 U.S. 937, 78 S.Ct. 779, 2 L.Ed.2d 812. In the cases referred to and in others which could be cited, the courts have followed the rule stemming from Weeks, undoubtedly under the belief that it still represents the position of the Supreme Court on the question.

We are not prophets but even if we were we think it would be rather hazardous to predict what the Supreme Court may do when and if the question involved is again presented to it. Casting aside any personal view which we may entertain as to what the rule should be, we think it a more judicious approach to follow the rule which the Supreme Court has so often and consistently embraced. Perhaps the contrary decision in Hanna will be the means of persuading the Supreme Court that it should again examine and decide the question. If so, the Hanna case will have served a good purpose.

■ After the motion to dismiss was denied and upon the case being called for trial, it was stipulated that all the records, files, proceedings and evidence offered on the motion to suppress might be considered by the court on the trial of the case. It was also stipulated that the package taken from the defendant contained heroin and that the chemist, if called, would so testify. There is no merit to the point that the heroin was not admitted into evidence. True, the court at the time stated that it was being received subject to being connected up, which obviously meant by evidence

that it was heroin taken from the defendant. In view of the stipulation, we think the package containing the heroin was properly before the court. While it is true there was no direct proof that the envelope containing the heroin did not bear the required stamp, that fact is plainly inferable from the circumstances in proof. More than that, the envelope was before the court, who had the opportunity to observe it. We must assume that the court when finding defendant guilty found that the elements necessary to constitute the offense had been proven. Other questions argued here have been considered and found to be without merit.

The judgment appealed from is

Affirmed.