## MITCHELL v. SWIFT & CO.
### No. 11344.

Circuit Court of Appeals, Fifth Circuit.

Dec. 4, 1945.

John White and W. E. Johnson, both of Dallas, Tex., for appellant.

Fred T. Porter, of Dallas, Tex., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

This is a suit to recover damages for personal injuries alleged by appellant to have resulted from a fall which occurred during the course of his employment as a lay meat inspector for the Government at appellee's plant in Dallas, Texas.

According to the bill of complaint, on January 24, 1944, while inspecting slaughtered hogs at appellee's plant, appellant stood as required on a bench or platform some three feet above the floor; he became tired of standing in one position, turned partially around, and, in order to maintain his balance, reached out to get hold of the guard rail built back of and parallel to the platform, approximately $2\frac{1}{2}$ to 3 feet above it. As he grasped the rail, it gave way, causing him to lose his balance, slip on the wet, greasy platform floor, and fall violently on his buttocks. As a result he received severe injuries in consequence of which he was physically incapacitated for work and suffered physical and mental pain.

Appellant alleged that his fall was due to negligence of appellee specifically as follows: (1) For maintaining the guard rail with a worn-out fastening device; (2) for failing to inspect the fastening device, failing to furnish a reasonably safe place to work, failing to inspect the premises at

reasonable times and particularly on the morning that the injuries were sustained, and failing to provide a strong, substantial guard rail for protection against falling. He further alleged that he would not be bound by the specific acts of negligence set forth but would rely also on the more general allegation of defectiveness, pleading in connection therewith that the rail was defective in some way unknown to him, that the defendant owned, maintained, controlled, and used the rail which was placed there for the protection of employees—in particular the Government inspectors, that the rail was old, worn-out and defective in a manner which, though unknown to him, was known to the defendant in the exercise of ordinary care, and that by reason of the defective condition the rail broke and gave way when the plaintiff came into contact with it, thus directly causing him to fall and suffer the injuries alleged. In answer the appellee denied all of the allegations of negligence, and pleaded certain acts of contributory negligence and unavoidable accident. The case was tried to a jury and was submitted by the court to the jury upon special issues or interrogatories covering each specific allegation of negligence and the general allegation of defectiveness. All of the issues were answered contrary to appellant's contentions. In the language of appellant: "The jury found that the guard rail was not defective; that Swift & Company did not fail to inspect the premises at reasonable times and on reasonable occasions; that there was no failure to furnish the plaintiff a safe place in which to work; that there was no failure of Swift & Company to inspect the fastening device of the guard rail, which was part of the guard rail; that there was no operation of the fastening device, or maintenance thereof, in a worn out condition; that the fastening device on the guard rail was not defective; that the guard rail did not fall at the time of appellant's injury; that appellant knew the condition of the floor where he was working at the time of his injury; that he used ordinary care for his own safety at the time of his injury; that in shifting his weight he became overbalanced and fell; and that his injuries were the result of an unavoidable accident."

In accordance with the jury's answers and findings, the court entered judgment in favor of the appellee, and appellant prosecuted this appeal. Reversal is sought on the grounds (1) that the court below erred in holding that the theory of res ipsa loquitur had no application; (2) that the court below erred in refusing to permit an ex parte statement of E. O. Johnson, an employee of appellee, to be introduced to contradict his testimony on a material point during the trial, and in not permitting Johnson to be cross-examined as a hostile witness in order to impeach him; (3) that the jury's finding that the guard rail did not fall at the time of plaintiff's injury was contrary to the great weight and preponderance of the evidence; (4) that the jury's finding that his fall was due to an unavoidable accident was opposed to the great weight and preponderance of the evidence; and (5) that the jury was biased and prejudiced.

In Texas where a plaintiff alleges specific grounds of negligence, he cannot rely on res ipsa loquitur. As said by the Commission of Appeals in an opinion approved by the Supreme Court in Universal Atlas Cement Co. v. Oswald, 138 Tex. 159, 157 S.W.2d 636, 639:

"In this case if plaintiffs had alleged generally that the defendant set off the blast and that the claimed damages to them proximately resulted therefrom, leaving negligence to be inferred from the fact of such blast we would be confronted with res ipsa loquitur. But they are not content so to pitch their case. They follow up their charge that the defendant set off the blast with an allegation of the specific acts which they say made it an act of negligence. Hence res ipsa loquitur is not in the case."

See also Stokes v. Burlington Rock Island, Tex.Civ.App., 165 S.W.2d 229; Ortiz v. El Paso Electric Co., Tex.Civ.App., 126 S.W.2d 515; Sims v. Dallas Railway & Terminal Co., Tex.Civ.App., 135 S.W.2d 142.

We find no fault with the court's statement that the doctrine had no place in this case.

E. O. Johnson, called by appellant as a witness, failed to testify as favorably for appellant as the latter had had reason to expect from an ex parte statement made by Johnson shortly after the accident; appellant, therefore, sought to introduce the ex parte statement and to cross-examine Johnson as a hostile witness for

772

the purpose of impeaching him. In 45 Texas Jurisprudence, pp. 174 and 175, the Texas rule, which is in conformity with the general rule, is thus stated:

"It is settled that in neither criminal nor in civil cases is impeachment authorized by failure of the witness to aid the case of the party calling him. * * * So in civil cases, the testimony * * * thus sought to be discredited must be such as disproves, in some degree, the case of the party by whom the witness is called; in other words, notwithstanding that the party is surprised thereby, it is not enough that the witness simply disappoints the expectations of such party, by failing to give testimony as beneficial as was expected."

The court correctly excluded this evidence.

Appellant's contention that the jury's findings that the guard rail did not fall at the time appellant was injured and that appellant's fall was an unavoidable accident were opposed to the great weight and preponderance of the evidence, might be disposed of, were we so inclined, by pointing out that when these special issues were submitted by the court to the jury no objection was made thereto by any party. Cf. Baten v. Kirby Lumber Corporation, 5 Cir., 103 F.2d 272. We find it unnecessary, however, to resort to rules of procedure in order to dispose of these two assignments of error, for they are disposed of by the findings of the jury which were clearly supported by the evidence. Some weeks prior to the trial appellant's deposition was taken before a notary public in his attorney's office; he was asked to tell how the accident happened, and he replied:

"I was standing on the bench, we call it a bench, it is about 3 feet above the floor, and the bench is about 2½ feet wide. Two feet wide, I will say, and I was standing making my rail inspection and I shifted from one foot to another on the bench. The bench was slick, it had scraps of meat on it and fats and grease and when I slipped I reached back there all in the same operation to get hold of this rail and overbalanced. I didn't touch it."

He was also asked: "What do you think caused you to fall?" His answer was: "When I reached, the rail was not there." On the trial he testified that he grabbed hold of the guard rail; that the guard rail gave way, causing him to fall; that his fall was the result of the falling

rail. The jury accepted his statement as made in deposition, and from all the evidence concluded, we think correctly, that in shifting his weight from one foot to the other, he became overbalanced and fell.

Judgment affirmed.