**Eugene Carroll STONE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15273.**

United States Court of Appeals
Fifth Circuit.

June 15, 1955.

**24**

Joe H. Jones, Dallas, Tex., for appellant.

William O. Braecklein, Asst. U. S. Atty., Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

Appellant was convicted of obtaining marihuana in violation of 26 U.S.C.A. § 2593(a), in the Northern District of Texas. This appeal raises the question whether there was sufficient proof of the place of the offense to sustain the conviction. That question was properly raised below by motion for judgment of acquittal.

The evidence showed that on August 16, 1954, pursuant to a search warrant, Dallas police officers Gandy, Blankenship, and Kaminski searched a motel room occupied by appellant and Antonio C. Ayala at 7111 South Lamar Street, Dallas. They discovered 552 grains of marihuana in the possession of the two, arrested them, and turned them over to federal authorities for prosecution. The men failed to produce an order form on a federal narcotics agent's demand, and admitted they had not paid the tax imposed by 26 U.S.C.A. § 2590(a).

Without more, this evidence would have sufficed to sustain a conviction under § 2593(a), because that section provides that "proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand * * *, to produce the order form required by section 2591 to be retained by him, shall be presumptive evidence of guilt under this section * * *."

But the evidence showed much more. Ayala pleaded guilty and testified against appellant, on behalf of the Government. He said that he and appellant had obtained the marihuana from a man he knew only as "Monkey" in San Antonio not long before the arrest. Now, the only evidence that the marihuana was acquired by the appellant in the Northern District of Texas, an essential element of the offense, is the fact of possession in that District and the failure to produce the order form on demand. As we held quite recently in Shurman v. United States, 5 Cir., 219 F.2d 282, 288–289, certiorari denied 349 U.S. 921, 75 S.Ct. 661, this is presumptive evidence (under the statute) that the crime was committed in the *place* where possession was proved. But concerning the strength of that presumption, we said, 219 F.2d 289–290:

"* * * [I]t is noteworthy that the statutory presumption with which we are dealing is constitutionally valid only because there is a rational connection between the fact proved and the ultimate fact presumed. * * * This kind of presumption, then, would seem to be no stronger than this rational connection, and to be rebutted when other evidence of equal persuasiveness, implying a contrary result, is introduced. * * *

"The mere self-serving testimony of the defendant, Frazier v. United States, 82 U.S.App.D.C. 332, 163 F.2d 817, or his family, Landsborough v. United States, 6 Cir., 168 F.2d 486, that the narcotics were obtained elsewhere than the place of apprehension, may properly be regarded as of less weight than the circumstance of possession in the particular district; and the jury may by virtue of the statutory presumption find the defendant guilty where the inference that the narcotics were obtained in the particular district is negatived only by such evidence."

There we held that other circumstantial evidence present constituted—

"* * * substantial evidence countering the statutory presumption from the single circumstance of possession in the Northern District

without an order form. That single circumstance, once countered by substantial evidence, is but a circumstance like any other, and weighing the combined evidence, we do not think a jury could reasonably conclude that it excluded every reasonable hypothesis except that there was an acquisition of marihuana in the Northern District by these defendants."

■ The question here is, what effect should be given to Ayala's testimony that he and appellant obtained the marihuana in San Antonio, in the Western District of Texas? Often an accomplice's testimony is not entitled to much weight, because he frequently has a motive to falsify. If he testifies for the prosecution, he may be currying favor by giving false testimony helping to convict;* or if he testifies in behalf of the accused, he may be attempting to help toward his own freedom. 3 Wigmore, Evidence (3d Ed.) § 967. But the exceptional thing here is that neither of those situations is present. Here Ayala testified for the *prosecution*, yet gave evidence which if true means that Stone is innocent of the crime charged. This makes it difficult to believe that Ayala lied. If he had any motive in testifying, clearly it was to curry favor by helping to *convict* appellant. Ayala had already pleaded guilty, thereby judicially admitting all facts in his indictment, so it was too late in the game for him to improve his lot by manufacturing exculpatory evidence.

Under these peculiar circumstances, we think no jury could reasonably fail to entertain a reasonable doubt that the marihuana was acquired in the Northern District of Texas, and therefore the motion for acquittal should have been granted. In the more usual case where the accomplice might say, in testifying for the *accused*, that the marihuana was not acquired in the district alleged, we think that his testimony alone would not over-

come the statutory presumption, just as the testimony of the accused or his family do not. Our decision is not based on what Wigmore calls the "primitive notion" that a party is conclusively bound by the statements of his witnesses. 3 Wigmore § 897. That is of course not true. Nor do we rely on analogy from the rule that a party may not in general impeach his own witness, 3 Wigmore § 896; Mitchell v. Swift & Co., 5 Cir., 151 F.2d 770, although that principle tends to support our result. We decide as we do because of the peculiar circumstances here that must be reasonably productive of doubt of appellant's guilt as alleged; the absence of any apparent motive on Ayala's part to falsify, and the inherent plausibility of his story.

The fact is that the Government might well have obtained a valid conviction if it had not placed Ayala on the stand. However, such a conviction would have been based on a finding of the venue of the crime to be in the Northern District of Texas, which seems to be highly doubtful. The Government is to be commended for bringing out all of the facts, even though to do so destroyed its case. However, it is difficult to understand why the Government would proceed to trial, having obtained a written statement as to what Ayala's testimony would be, without any proof of venue in the Northern District of Texas. The prosecution thus put itself in the unenviable position of asking the trial court to rely on a presumption of the truth of a fact that its principal witness testified was not true.

As in the Shurman case, supra, we deem it just to remand this case for a new trial. There is strong evidence that Stone committed an offense of some sort and of some magnitude; it is right that the Government should try him again if it obtains any other evidence that he committed the offense charged. We would be reluctant to conclude that the Government cannot reasonably ex-

---

* Hence the rule in many jurisdictions that one may not be convicted on the uncorroborated testimony of an accomplice.

pect to obtain other evidence, and thus we do not order a judgment of acquittal. We explicitly add, however, that a valid second conviction must be based upon some *new* evidence, not simply on eliminating Ayala's testimony from the case in chief. For we decide here as a matter of law that the circumstances here entitled that testimony to such weight that Stone's conviction cannot stand without affirmative evidence of commission of the offense in the Northern District, over and beyond the circumstance of possession there and the presumption based thereon; this conclusion is the law of the case. A new trial might omit Ayala's testimony, but it cannot alter the facts that entitle it to weight. Consequently, a second conviction based on no *new* evidence could not stand either, since the defense could, of course, introduce the record of the former trial. We think it appropriate to explain these matters to assist the Government in determining whether a new trial would be warranted.

The judgment is reversed and the case remanded for a new trial.