Jose Terrones **RIOS**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15723.**

United States Court of Appeals
Ninth Circuit.

May 26, 1958.

See also, 21 F.R.D. 7.

Harvey M. Grossman, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Leila F. Bulgrin, Lloyd F. Dunn, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before POPE, FEE and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

Jose Terrones Rios appeals from his conviction for violating § 2 of the Narcotic Drugs Import and Export Act, as amended, 21 U.S.C.A. § 174.

Rios contends that it was error to receive in evidence a package of narcotics which had been seized by city police, where a state court had supressed the same evidence, and acquitted, in a prosecution involving the identical incident.

The facts essential to a consideration of this contention are as follows: Los Angeles police officers, watching for possible illegal narcotics activity in a problem-area of the city, took under surveillance a taxicab which was parked in a lot next to an apartment house. They observed Rios approach the taxicab, look furtively about, and enter. As the vehicle drove away, the police officers followed in an unmarked police car. The time was 11:00 p. m.

When the taxicab stopped at a traffic signal, the two officers alighted from their car and approached. They had no warrant for Rios' arrest, had not seen him commit any crime, and had no idea as to his identity. One officer came to the side of the taxicab where Rios was seated, and orally identified himself as a police officer. He exhibited his badge and shined his flashlight upon it. He then observed that Rios reached into his pocket and dropped an object on the floor of the taxicab.

Focusing his light upon the object, the officer saw that it was a transparent rubber contraceptive apparently filled with a light colored powder. The officer knew that it was a common practice for dealers in narcotics to use this means of carrying heroin.

Immediately thereafter, Rios pushed the right door out as the officer simultaneously pulled it out. Rios alighted.

The officer grasped Rios' arm, telling him he was under arrest "for narcotics." The other officer retrieved the package from the floor of the taxicab. It was later found to contain heroin. Rios struggled free from the officer, but was later recaptured.

Charged in the California Superior Court with illegal possession of narcotics, contrary to California Health and Safety Code, § 11500, Rios was accorded a preliminary hearing. A trial was thereafter had in the state court. The only evidence received was the reporter's transcript of the preliminary hearing. A motion to suppress the evidence, consisting of the package of heroin, was made and granted. The court held that the police officers did not have probable cause for arresting Rios without a warrant of arrest, and that seizure of the evidence without a search warrant was therefore unlawful. Rios was then acquitted.

The police officer who had arrested Rios, after conferring with his superiors, went to the federal narcotics office. As a result, an indictment was returned by a federal grand jury, charging Rios with a violation of 21 U.S.C.A. § 174, referred to above. This charge related to the same incident and narcotics involved in his state prosecution.

Rios moved in the federal district court to quash the indictment on the ground that it had been obtained solely on the same evidence which had been suppressed by the state court. In the alternative, and for the same reason, he moved to suppress this evidence.

At a pretrial hearing on these motions, Rios offered a transcript of the state court hearing in which the evidence was ordered suppressed. On the basis of this showing, he urged that one or the other of his motions be granted. The district court declined to grant either of the motions on this showing, and stated that it would receive further evidence. Rios then introduced a transcript of the state court preliminary hearing in which the facts which led to the state court ruling were developed. The government called the two police officers to give further testimony, and they were cross-examined.

The district court then held (1) that it was not bound by the state court determination that the evidence had been illegally seized; (2) that the seizure was legal because made incident to a lawful arrest; and (3) that there was no federal participation in the arrest and seizure. The motions were accordingly denied and the narcotics were later received in evidence.

It will be observed that the denial of these motions rests upon two grounds: (1) That the evidence was legally seized; and (2) that, if it was illegally seized, it is nevertheless admissible because federal authorities did not participate in the seizure.

Concerning the first of these grounds, Rios does not argue that the evidence submitted to the federal court fails to support the finding and conclusion that the evidence was legally seized. He contends only that the state court determination that the evidence was illegally seized is binding upon the federal court and precluded such court from making an independent determination.

We do not agree. A state court prosecution and acquittal does not preclude subsequent federal prosecution and conviction of the same person on a similar federal charge. Serio v. United States, 5 Cir., 203 F.2d 576.[1] This being so, we perceive no reason why any state court ruling which leads to an acquittal in that court is binding on the federal court in a later federal prosecution.

It is true that here the state court ruling which led to acquittal pertains to a basic right—the right to be secure in person and property—which right is enforceable against both federal

[1]. This is an application of the rule announced in United States v. Lanza, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314. See, also, Jerome v. United States, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640; 16 A.L.R. 1231, 22 A.L.R. 1551, 48 A.L.R. 1106, annotations.

and nonfederal authorities.[2] It is also true that the state court ruling represents an application of a method of enforcing this right—exclusion of illegally-seized evidence in a subsequent criminal trial—which both the federal government and California utilize.[3]

But the federal trial court did not here contest that constitutional principle or deny to California the right to apply, in its own way and in its own proceedings, the mutually-followed remedy. That is all California sought to do in this case—and it succeeded—by excluding the evidence and acquitting Rios of the state charge. California has not sought to exclude that evidence from use in a federal criminal proceeding.[4]

The federal court has, it is true, differed from the state court as to the findings and conclusions to be drawn from the evidence pertaining to the method of seizure.[5] No presently-recognized principle of constitutional law, evidence, comity, or res judicata [6] prevented it from doing so. If a wholly novel doctrine is to be fashioned to tie the hands of the federal courts in this regard, it ought not to be done by an intermediate appellate court.

We therefore hold that the federal trial court was entitled to make its own determination as to the legality of the seizure, and that its uncontested finding and conclusion that the seizure was legal warranted denial of the motions in question.

We reach the same result upon consideration of the second ground relied upon by the trial court in denying these motions.

 Where it is conceded by the parties, or determined by the federal trial court, that incriminating evidence was illegally seized, it may nevertheless be received in a federal prosecution, if the seizure was made without the participation of federal officials.[7] This is true even though the state wherein the evidence was seized, as in the case of California, has a state exclusionary rule similar to the federal court exclusionary rule announced in Weeks, supra.[8]

2. Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782.

3. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; People v. Cahan, 44 Cal.2d 434, 282 P.2d 905, 50 A.L.R.2d 513.

4. The United States excludes from use in state court criminal proceedings, evidence seized by federal authorities under a void search warrant. Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233. Whether California could adopt a similar enforcement technique, we need not now decide. It did not do so in this case.

5. Actually, the federal court findings and conclusions were based upon a more extensive showing than was presented in the state court. We do not know what the state court ruling would have been on the amplified record.

6. The application of res judicata in such circumstances has been specifically denied. Serio v. United States, 5 Cir., 203 F.2d 576, 578.

7. Lustig v. United States, 338 U.S. 74, 78, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819: " * * * It is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter. * * * "; Byars v. United States, 273 U.S. 28, 33, 47 S.Ct. 248, 71 L.Ed. 52; Center v. United States, 267 U.S. 575, 45 S.Ct. 230, 69 L.Ed. 795, per curiam, as explained in Gambino v. United States, 275 U.S. 310, 317, 48 S.Ct. 137, 72 L.Ed. 293; Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652. This court has long applied the "silver platter" doctrine. See Andersen v. United States, 9 Cir., 237 F.2d 118; Parker v. United States, 9 Cir., 183 F.2d 268; Symons v. United States, 9 Cir., 178 F.2d 615; Hall v. United States, 9 Cir., 48 F.2d 66.

8. For example: Washington had such an exclusionary rule (State v. Buckley, 145 Wash. 87, 258 P. 1030) at the time we applied the "silver platter" doctrine with regard to evidence illegally seized by state authorities in that state. Parker v. United States, supra. Likewise, state rules of exclusion were in effect in Missouri (State v. Owens, 302 Mo. 348, 259 S.W. 100, 32 A.L.R. 383) and Indiana (Flum v. State, 193 Ind. 585, 141 N.E. 353) at the time the federal courts applied the "silver platter" rule with regard to exhibits seized by state authori-

■ We see no reason why the same rule should not be applied where the determination that the evidence was illegally seized by state or local authorities is made by a state trial court. The "silver platter" doctrine operates on the assumption that the illegality of the state seizure has been established. How it has been established is immaterial.

Hence, even if it be assumed that the federal trial court was bound by the findings and conclusions of the state court, to the effect that the seizure was illegal, the evidence was still admissible in the federal proceedings upon application of the "silver platter" doctrine. The only escape from this conclusion is to say that the doctrine to which reference has been made is not to be applied where there has been a state court determination that the evidence was illegally obtained. We find no authority for such an exception to the doctrine.

■ We therefore hold that the trial court did not err in receiving in evidence the package of narcotics seized by city police.

Rios also contends that the trial court erred in restricting his right to examine statements given to federal authorities by the two police officers who testified for the government. In presenting this argument, appellant relies upon the decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.

Under this heading, it is argued, first, that while the written statements signed by these witnesses were produced for inspection, the court erred in excluding reports or records, prepared by federal agents, of oral statements made by the witnesses, where such reports or records were not in the words of the witnesses.

The record on appeal fails to show that there were any reports or records prepared by federal agents on the basis of oral statements made by the witnesses in question. Nor did counsel for appellant ask for any reports or records except such as were substantially in the words of the witnesses. Moreover, counsel for appellant did not, during the trial, object to the limitation which the court placed upon the reports and records to be supplied.[9]

■ In view of these circumstances, the court ruling was not prejudicial, and, even if it were, counsel for appellant did not make and preserve a record upon which the ruling can now be examined.

---

ties in those jurisdictions. See Jones v. United States, 8 Cir., 217 F.2d 381; United States v. Stirsman, 7 Cir., 212 F.2d 900.

During a pretrial hearing on certain motions, at which the two police officers testified, and while Officer Beckman was under cross-examination, counsel for Rios moved that "any transcript of any statement, oral or written, made by this witness to the federal agency—and particularly the statement just referred to—be made available by the government for inspection of the defendant," for assistance in preparing for cross-examination. Counsel for Rios then clarified this request by stating that, in asking for a "transcript," he was "referring to a transcript which purportedly set forth all of the testimony, or substantially all of the testimony of the witness, and not mere notes. * * * Substantially the witness' words."

Later during the same hearing, while Officer Grace was under cross-examination, counsel for Rios requested that "in so far as the government has any written record of the statements of this witness as setting forth the substance of her statement as opposed to mere notes taken as to the government's position in connection with her remarks, that these be produced for inspection along the lines indicated previously by Your Honor."

During a recess in the trial, and while Officer Grace was on the stand, counsel for Rios moved "that any statement of this witness to any officer or agent of the federal government be produced for examination." The witness then stated, in response to questions from the bench, that she had not made any statement in writing to any officer of the federal government, other than a police report which she had prepared in collaboration with Officer Beckman. The court ordered that this be supplied for inspection by counsel for Rios, and this was done.

Counsel at no time objected to the ruling of the court limiting the reports and records to be supplied.

Whether the ruling was correct, we need not decide.[10]

Rios also argues, however, that with regard to the written statement of the witnesses, which was produced for examination, the trial court improperly exercised the right to determine the materiality and relevancy thereof. Here, too, Jencks is relied upon to support the contention.

During the pretrial hearing, counsel for the government produced a written arrest report, consisting of four sheets, prepared by Officers Beckman and Grace. Before permitting counsel for appellant to inspect this report, the court folded over, and stapled, a part thereof. The part thus excised was apparently a summary, by Beckman and Grace, of a statement which the taxicab driver had made to them. The taxicab driver was not called as a witness during this pretrial hearing.[11] Counsel for Rios voiced no objection to this procedure.

During the trial, the same procedure was followed. On that occasion, counsel for Rios observed that the taxicab driver had already testified in the trial. Government counsel responded by stating that the references in the arrest report were not the statements of the taxicab driver. Other than the indicated remark concerning the taxicab driver, counsel for Rios did not object to this action taken during the trial.

■■ The fact that counsel for appellant did not voice specific objection to

the procedure followed would be enough to dispose of the point now under discussion.[12] The record further indicates, however, that, neither during the time the taxicab driver was on the witness stand, nor thereafter, did counsel for Rios indicate any desire to inspect any pretrial statement made by that witness, for the purpose of preparing impeachment cross-examination.

That witness had completed his testimony and, for all we know, had gone on his way. It was then too late, except upon showing an adequate excuse, to begin preparing for his cross-examination. In any event, no such request was made.

On this state of the record, and without reaching the merits, we hold that the judgment may not be reversed because of the action of the trial court in excising a portion of the arrest report.[13]

Finally, Rios contends that the trial court erred in refusing his request to examine the statements made by Officers Beckman and Grace before the grand jury.

The two officers did not testify before the grand jury. The argument therefore assumes a fact which is nonexistent. We do not reach the question of whether statements made before the grand jury must be produced for inspection by a defendant.

Affirmed.

---

10. If this case were to be remanded for a new trial, the procedure would be governed by the recent enactment of 71 Stat. 595, adding new § 3500 to title 18, United States Code. United States v. Miller, 2 Cir., 248 F.2d 163, 165. Paragraph (e) of the new section defines the term "statement" in a manner consistent with the ruling of the trial court in this case. See, also, the legislative history of 71 Stat. 595, 2 U.S.Code Congressional and Administrative News (1957), 1861–1870.

11. In taking this action, the court said: "The government has not and is not apparently at this moment relying on the

other witness, and may not, and under my conception of the Jencks case you are not entitled to see anything relating to that other witness until the government decides to rely upon his testimony."

12. Were we to assume that this trial court action was erroneous, we could not determine whether it was prejudicial, in view of the fact that the arrest report, with excised portion indicated, is not before us on this appeal. See United States v. Miller, supra, 248 F.2d at page 165.

13. There is some contention that the trial court unduly restricted the cross-examination relative to this arrest report. We do not agree.