Elmer Samuel CHAPMAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17811.

United States Court of Appeals Fifth Circuit.

Dec. 1, 1959.

---

J. Sewell Elliott, Macon, Ga., for appellant.

John C. Bracy and Floyd M. Buford, Asst. U. S. Attys., Frank O. Evans, U. S. Atty., Macon, Ga., for appellee.

Before RIVES, Chief Judge, and TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal from a conviction on a four count illegal liquor indictment presents principally the question whether the trial court erred in not suppressing evidence and testimony of the prosecuting witnesses resulting from a search without a warrant.

The search, which appellant contends was illegally conducted, was made by local state officers in Bibb County, Georgia. The circumstances under which the search was made are somewhat different from the usual case of this kind. One Bridgeman was the owner of the house in question. Georgia State Revenue Officer Chance received a call from Bridgeman who told the officer that he owned this house and that he thought it had been rented and he had gone by to invite the people to church on this Sunday afternoon; that upon approaching the property he smelled mash which he identified as coming from within the house. Whereupon he told Chance that if he would come out to the premises he would show him a still. Chance called other officers; they joined Bridgeman and went with him to the premises. There they found all the shades of the house drawn and the doors locked. The officers also testified to the strong smell of mash emanating from the house. *At Bridgeman's request* they entered the house through an open window and found it unoccupied except for the presence of a complete illegal distillery. There was also a partially run quantity of mash. There was no evidence of occupancy as a residence, although several cans of sardines and boxes of soda crackers were found in the vicinity of the distilling apparatus. The officers then called the local office of the Federal Alcohol Tax Unit and asked them to come to the scene to assist in dealing with the matter.

While the State officers were waiting, the appellant accompanied by an unidentified person, drove up and entered the front door. He was there arrested and placed in his automobile where he remained until the Federal officials arrived on the scene. He was identified as the person who had leased the house from Bridgeman through a real estate agent. His keys, which he turned over to the State officers after being arrested, included a key to the front door of the leased premises.

Upon the arrival of the Federal officers they went into the house and destroyed

the still and contents, after keeping such material evidence as they deemed necessary for a subsequent prosecution.

Appellant contends that the Federal officers, at the time they first entered the premises, did so without a warrant, which of course is not disputed, and that they thus participated in the illegal search, the fruits of which were made the basis of the subsequent prosecution. The Government, on the other hand, contends that the State officers had completed the search at least to the extent that when the Federal officers arrived they then had probable cause for a Federal arrest of Chapman, and a search of the premises, by reason of what the State officers then presented to them. Appellee says that the State's search itself was not illegal, but if it was, the search by the Federal officers was not infected with this illegality. Shurman v. United States, 5 Cir., 219 F.2d 282, certiorari denied, 349 U.S. 921, 75 S.Ct. 661, 99 L.Ed. 1253. See Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819.

The trial court, without distinguishing between the actions of the State and Federal officers, held that under the peculiar circumstances here present, this was not an illegal search.[1]

The circumstances which the court considered especially significant were that the owner of the premises himself identified to his own satisfaction a smell of mash emanating from his property previously thought to have been rented to a tenant for residential purposes; that he himself requested the officer to investigate; the fact that it was on a Sunday afternoon and that the property was not used as a residence but as a "manufacturing establishment."

We agree with the conclusion and reasoning of the trial court. We do not come to the question whether, if the actions of the State officers were illegal, this would be a case in which the search by the Federal officers would be insulated from attack under the " 'silver platter' doctrine." See Rios v. United States, 9 Cir., 256 F.2d 173, 177. We recognize that the question whether such doctrine, most recently restated in the Lustig case, supra, will ultimately prevail in light of the attacks currently being made upon it could not be resolved by us so as to conflict with the previous decisions of this Court and of the Supreme Court even if we were inclined to do so (which we do not decide). We note, however, that there is now pending in the United States Supreme Court the case of Elkins v. United States, 80 S.Ct. 61. This case, decided by the Court of Appeals for the Ninth Circuit, 266 F.2d 588, 594, held, as we have heretofore decided, that the illegality of a state search would not of itself warrant the suppression of evidence in a Federal prosecution. The Court there said:

"* * * the unlawfulness of the State search and seizure, if indeed they were unlawful, did not entitle defendants to an order of the District Court suppressing the property seized."

---

1. The short and direct comment by the trial court follows:

"The Court: Well, I'm going to overrule the motion to supress. I do not think that this house rented and used as it was is entitled to the protection which the constitution and the laws throw around private dwellings. That being true, I think that a manufacturing establishment of this kind can be searched on a Sunday afternoon upon probable cause, and I think that the probable cause existed in this case, particularly in view of what owner Bridgman had seen and smelled and had related to the officers, and on what the officers smelled and saw and heard from Mr. Bridgman when they approached the premises in view of the fact that owner Bridgman told the officers that he had reason to believe that there was a still in his house and not only consented but asked the officers to go in and see about it, although it was in the absence of the bare lessee who, on his pleadings in this court, does not claim that he was in possession of the house but is a bare lessee. I think that this search could not be branded as unreasonable under the Constitution. And, therefore, that's my ruling and you may take an order accordingly, Mr. District Attorney."

Even if this Court were free to anticipate a reversal of this decision on the pending appeal by the Supreme Court, we need not decide this question. Instead, we concur in the judgment of the trial court that under the circumstances of the search here made by the State officers, no illegality was shown.

We have considered the other question raised by the appeal but find no merit in the contention that the court erred in submitting the case to the jury on the testimony properly before it.

The judgment is affirmed.