**William Arthur MANNING, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 17731.**

United States Court of Appeals
Fifth Circuit.

Jan. 21, 1960.

Philip T. Weinstein, Arthur B. Cunningham, Michael F. Zarowny, Miami, Fla., for appellant.

David C. Clark, Jr., Asst. U. S. Atty., James L. Guilmartin, U. S. Atty. for Southern Dist. of Florida, Miami, Fla., for appellee.

Before HUTCHESON, TUTTLE and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

On January 15, 1958, an indictment was returned charging that in the Southern District of Florida, the appellant, William Arthur Manning, and Sally Gelston "did acquire and otherwise obtain" marihuana without having paid the transfer tax, in violation of 26 U.S.C.A. § 4744(a). Manning entered a plea of not guilty, moved to suppress certain evidence, and moved to dismiss the indictment. Both motions were denied. The cause went to trial. At the close of the government's evidence, Manning moved for a judgment of acquittal alleging, among other grounds, that a part of Section 4744 was unconstitutional. This motion too was denied. Appellant offered evidence and, at the close of the evidence, renewed his motions. The trial court reserved ruling and submitted the case to the jury. The jury returned verdicts of guilty as to appellant and his co-defendant. Appellant renewed his motions for judgment of acquittal, again urging the unconstitutionality of Section 4744(a). This motion was denied. Judgment was entered against Manning imposing a fine of $500 and imprisonment for three years. Appellant Manning appeals from this judgment. We affirm.

The facts may be stated briefly. In April 1957 two inspectors of the Florida State Bureau of Narcotics and two officers of the Miami Beach Police Department, without a warrant, broke into a house in North Miami, Florida, where the defendants, Manning and Gelston, were living. No one was at home. The police officers were beyond their territorial jurisdiction; they broke in, allegedly "to search the house in the event someone was hiding in the house". The Florida narcotics inspectors acted on instructions from the State Attorneys' office; they had been informed that a capias had been issued for Manning's arrest. The inspectors and the police officers found in one of the bedrooms a wicker basket containing marihuana.

Shortly after Manning and Gelston returned home, the officers, who had been watching the house, came to the door. They told the defendants that they had a warrant. This was false. The officers entered the house and placed Manning and Gelston under arrest. Sally Gelston, according to the testimony, "jumped out of her shoes", grabbed up the wicker basket, and ran down the hall with it in the direction of Manning's bedroom.

The officers searched the room. They found the basket in a closet. They also found a plastic package containing marihuana in the top dresser-drawer. Manning denied any knowledge of the plastic package. He refused to answer any questions. He admitted however that the room was his bedroom. The next door neighbor testified that she knew of no one else living in the house except Manning and Gelston.

Twenty-one months later, on January 5, 1959, in Chicago, Illinois, Joseph Dino, a federal narcotic agent, served demands on Manning and Gelston to produce an official order form covering the transfer of the marihuana found in their possession in Miami, Florida. Appellant contends that the forms were incomplete in that the time and place of production were blank. The exhibit admitted in evidence was addressed to Manning and demanded that Manning produce an official order form within eight days. Dino testified that he told Manning he should produce the required order form at Room 817, New Post Office Building, Chicago, Illinois. The agent testified that he read the order to Manning and filled it out on the copy that was served after he had read the order. He filled out Manning's copy and other copies after he read the form to Manning.

During the conversation in Chicago, Dino testified, Manning asked him to explain what the order form amounted to, and what was required to obtain one. Dino explained to him that in certain circumstances one may possess marihuana legally, provided that an application is made to the Director of Internal Revenue to obtain the order form covering the transfer of marihuana; that the tax for the form is one cent, and that there was a tax on the marihuana itself.

Manning asked the agent, if he paid the tax would that settle the case. Dino replied that he could not answer that question.

No evidence was presented as to non-payment of the tax or as to the acquisition or as to the place of acquisition, the government announcing its reliance upon the statutory presumption of guilt based on the fact of possession. The pertinent statute, 26 U.S.C.A. § 4744(a) (1),[1] provides:

"(a) Persons in general.—It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 4741(a)

"(1) to acquire or otherwise obtain any marihuana without having paid such tax. * * * Proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the Secretary or his delegate, to produce the order form required by section 4742 to be retained by him shall be *presumptive evidence of guilt under this subsection* and of liability for the tax imposed by section 4741(a)." (Emphasis added.)

I.

The appellant challenges the constitutionality of Section 4744(a) (1) on the ground that the statute fails to meet the requirements of due process in that there is no rational connection between the ultimate facts presumed and the facts proved ("possession" plus failure to produce the order form) on which the presumption is based. Appellant concentrates on the point that there is no rational connection between the illegal act of obtaining marihuana and the presumption that the act occurred in the venue

---

1. This section was originally enacted as a portion of the Marihuana Tax Act of 1937, 50 Stat. 555. It was reenacted as § 2593 of the Internal Revenue Code of 1939 and again as § 4744 of the Internal Revenue Code of 1954. The most recent amendment of this section was as § 101 of the Narcotic Control Act of

1956, 70 Stat. 567, enacted July 18, 1956. This latest amendment added subparagraph 2, which created a new and separate offense:

"(2) to transport or conceal, or in any manner facilitate the transportation or concealment of, any marihuana so acquired or obtained."

where the defendant was found and arrested.[2]

In a case frequently cited for its statement of the "rational connection" test, Mobile, J. & K. C. R. Co. v. Turnipseed, 1910, 219 U.S. 35, 43, 31 S.Ct. 136, 138, 55 L.Ed. 78, the Supreme Court said:

"That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law, it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed."

See also Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Minski v. United States, 6 Cir., 1942, 131 F.2d 614, affirmed 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519; Annotations, 51 A.L.R. 1139, 86 A.L.R. 179, 162 A.L.R. 495; 4 Wigmore, Evidence, § 1356 (2d 1940); Brosman, Statutory Presumptions, 4 Tul.L.Rev. 17, 178 (1930-1931); Hale, Necessity of Logical Inference to Support a Presumption, 17 So.Cal.L.Rev. 48 (1943).

Tot v. United States, 1943, 319 U.S. 463, 63 S.Ct. 1241, 1243, 87 L.Ed. 1519 added a corollary to the rational connection test.[3] The Supreme Court had before it the Federal Firearms Act, 15 U.S.C.A. § 902(f). This act made it unlawful for a person who is a fugitive from justice or convicted of a crime of violence to receive a firearm shipped in interstate commerce. The act provided that the possession of a firearm shall be "presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act". The Supreme Court stated:

"The Government seems to argue that there are two alternative tests of the validity of a presumption created by statute. The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of opinion that these are not independent tests but that the first is controlling and the second but a corollary. Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts."

Substantially the same argument was made in Caudillo v. United States, 9 Cir.,

---

2. Appellant argues that the facts proved were only that: (1) a substance identified as marihuana was found in the appellant's home in Miami in the hands of Sally Gelston; (2) twenty-one months later, in Chicago, a federal agent made an unlawful and unauthorized search and at that time served a written form of demand with information as time and place of production left blank. The facts presumed from the proved facts are that:

(1) appellant was a transferee of marihuana; (2) appellant committed the act of obtaining or acquiring marihuana; (3) such act took place in the Southern District of Florida; (4) if appellant so acquired the marihuana, he did not pay the transfer tax; (5) if appellant acquired the marihuana, he did so within the effective date of the statute and within the statute of limitations.

3. See Note, 56 Harv.L.Rev. 1325 (1943).

1958, 253 F.2d 513, 517, certiorari denied in Romero v. United States, 357 U.S. 931, 78 S.Ct. 1375, 2 L.Ed.2d 1373 as was made in the instant case. Caudillo involved the prohibition of the importation or possession of marihuana in violation of 21 U.S.C.A. § 176a. This section is almost identical with 26 U.S.C.A. § 4744 in that it creates a presumption based on the possession of marihuana. It goes further than Section 4744 in that it provides that possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains his possession to the satisfaction of the jury. The court held that the presumption was constitutional, although it supplied two elements of the crime: (1) illegal importation and (2) knowledge by the defendant of the illegal character of the marihuana. As in this case, the defendant relied heavily on the Tot case. But, said the Court:

> "The difficulty with appellants' reliance on the Tot case is that it provides no precedent in this, a factually different case. The possession of a firearm or ammunition is ordinarily lawful. There exists the possibility of lawful possession of opium derivatives, or other narcotics, for they have definite therapeutic medical values and a scientific need exists for their possession by many doctors and almost every hospital in the United States. But this Court knows of no medical or scientific use to be made of marihuana, save perhaps for occasional testing, in order to make scientific comparisons with other narcotics, barbiturates and amphetamines."

In the light of these decisions, and others, we believe that there is a logical nexus between the fact of possession and the presumption that the offense of "obtaining and acquiring" took place in Miami, Florida. The defendants had lived in the same house in Miami, Florida, for seven years. It is certainly not irrational to infer that the acquisition of the marihuana took place in or near the city where the defendant lived. There is no evidence to show, and no reason to think, that the acquisition took place anywhere else.

We think that the statutory presumption should be considered in the light of the broad purpose of the statute: to stamp out drug trafficking by making it easier for the government to obtain convictions. See United States v. Santore (Casella), 2 Cir., 1959, —— F.2d ——. This does not mean that the legislature, in effect by fiat, may declare an individual guilty of a crime, by shifting the burden of proof arbitrarily, making one fact, which has no relevance to guilt, the occasion for saddling on the defendant a virtually impossible task of exculpation. McFarland v. American Sugar Refining Co., 241 U.S. 79, 36 S.Ct. 498, 60 L.Ed. 899. It does mean, as we see it, that the legislature may establish a rule of presumptive evidence that is essentially a reasonable regulation of the burden of proof, reasonable because the explanation of the possession of marihuana is peculiarly within the knowledge of the defendant.

In Casey v. United States, 9 Cir., 1927, 20 F.2d 752, 753, affirmed 1927, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632, the court upheld the statutory presumption that the absence of federal stamps from a package containing narcotics was prima facie evidence of a violation of a statute proscribing purchases from anything but a stamped package. As in the instant case, the defendant argued that the statutory presumption did not extend to venue. The court held that to grant the defendant's contention would "rob the statute of all efficacy". The Court of Appeal said:

> "If, independently of the statutory presumption, the government must affirmatively prove the place of purchase, it must also by like evidence prove the substantive fact of purchase, for how the place of purchase can be established without at the same time proving the purchase is not apparent. Fairly construed, the statute in our opinion extends the presumption to the incidental

matter of place, as well as the substantive matter of purchase."

In affirming the case, Mr. Justice Holmes, for the majority of the Supreme Court, observed that "the statute here talks of prima facie evidence ['presumptive evidence'] but it means only that the burden shall be upon the party found in possession to explain and justify it". [276 U.S. 413, 48 S.Ct. 374.]

In Acuna v. United States, 5 Cir., 1934, 74 F.2d 359, 360, Judge Sibley, for this Court, cited Casey with approval and pointed out that "there is some initial probability that the presumed purchase occurred in the place where the possessor has the morphine when it is his fixed residence, and he is not shown to have gone elsewhere for it". More recently, in Shurman v. United States, 5 Cir., 1955, 219 F.2d 282 and in Stone v. United States, 5 Cir., 1955, 223 F.2d 23, Judge Tuttle, for this Court, reiterated our position that the presumption encompasses venue.

Appellant does his best to extract aid and comfort from Committee Report H.R. 2388 accompanying H.R. 11619, Section 102 of which was identical with Subsection 2 of Section 4744(a) as finally enacted in 1956. This report reads, in part:

"Under existing law it is unlawful for any transferee to acquire or otherwise obtain marihuana without payment of tax. It is difficult under existing law to prove the unlawful acquisition of marihuana in the jurisdiction where the defendant is apprehended. Sometimes the Government's own evidence will indicate that the defendant acquired the marihuana in another venue. This handicap would be overcome by providing for venue not only in the jurisdiction where acquisition occurred but also in the jurisdiction where possession was discovered." 1956 U.S.Code Congressional and Administrative News, p. 3276.

This very language, appellant argues, shows that application of the presumption to venue is arbitrary and irrational

and that Congress itself recognized that there was no real connection between possession and venue. Appellant presses the argument too far. To our mind, the language of the Committee Report simply indicates an awareness by Congress of the difficulties inherent in the administration of the act. These difficulties were the reason for the statutory presumption. The language of the report is consistent with the principle of comparative convenience, the secondary test of the validity of a statutory presumption, as expressed in Tot: "The argument from convenience is admissible only where the inference is a permissible one, where the defendant has more convenient access to the proof, and where requiring him to go forward with proof will not subject him to unfairness or hardship." [319 U.S. 463, 63 S.Ct. 1246.]

■ We consider it unnecessary to answer all of the points made by appellant in support of his contention that Section 4744(a) is unconstitutional. In our opinion, there is a rational connection between Manning's possession of marihuana at his established residence in Miami and the presumptive evidence that Manning obtained the marihuana in the Southern District of Florida.

### II.

Appellant contends that the service of a form of demand for production of an order form covering the marihuana in question violated the statutory requirement of reasonableness. Here, the appellant was arrested April 8, 1957 in his home in North Miami, Florida. It was not until twenty-one months later and then in Chicago, Illinois, that a federal narcotic agent served what purported to be a demand for production of an order form.

■ The requirement of reasonable notice and demand set forth in Section 4744(a), Title 26 U.S.C.A. is not an element of the offense charged under this section. The government need show only that the defendant was a transferee who is required to pay the transfer tax

and that the defendant obtained marihuana without paying the tax. United States v. Pruitt, S.D.Tex.1954, 121 F. Supp. 15, affirmed 5 Cir., 217 F.2d 648. The government is entitled to the benefit of the presumption even if the demand is made after the indictment, provided that it is made a reasonable time before trial. Henry v. United States, 9 Cir., 1951, 186 F.2d 521, certiorari denied 341 U.S. 915, 71 S.Ct. 735, 95 L.Ed. 1350. In Gondron v. United States, 5 Cir., 1958, 256 F.2d 205, certiorari denied 358 U.S. 865, 79 S.Ct. 96, 3 L.Ed.2d 98 this Court held:

"A demand for, and refusal to furnish an order form authorizing transfer of marihuana, as prescribed by statute, when demanded, is no part of the offense of acquisition of marihuana without paying the transfer tax, and it is not necessary for a conviction therefor to allege or prove that a demand for an order form was made, although, when demand for and refusal to furnish such form is shown, a prima facie presumption arises that the possession is unlawful and burden of showing lawfulness of such possession is then on defendant."

See also Symons v. United States, 9 Cir., 1949, 178 F.2d 615; Grabenheaimer v. United States, 6 Cir., 1952, 194 F.2d 447; and Cratty v. United States, 1947, 82 U.S.App.D.C. 236, 163 F.2d 844.

We confess to a lack of sympathy when unreasonableness is argued in the abstract. Appellant does not say that he had a form, and that in the course of twenty-one months it was lost or destroyed. He makes no showing whatever and no contention that the lapse of twenty-one months placed him at any disadvantage. Nor does the appellant suggest that he was affected adversely by service at Chicago, Illinois, where he admittedly resided at the time he was served. In the circumstances of this case, when the service was made in Chicago seven weeks before the trial, we cannot say that the lapse of twenty-one

months between his arrest and the service of the demand was unreasonable.

Appellant contends also that the demand was unreasonable in that the time and place of production were left blank on the form. The record shows however, that the agent filled in the blanks in the presence of the defendants, advised them verbally as to the purpose and effect of the demands, and informed them of the address where the order should be produced.

### III.

The appellant argues that the government failed to show directly that the appellant had any marihuana in his possession and that the evidence is at least equally consistent with the inference that appellant had no knowledge of the marihuana found in his home. It is uncontroverted that the appellant had resided for seven years in the house where the marihuana was seized. He admitted that a portion of the marihuana seized was in the dresser in his bedroom. Considering the evidence in the light most favorable to the Government, there was ample evidence to support the inference that Manning had possession of the marihuana. De Luna v. United States, 5 Cir., 1955, 228 F.2d 114; Morales v. United States, 5 Cir., 1956, 228 F.2d 762; Zavala v. United States, 5 Cir., 1958, 256 F.2d 164; Bellah v. United States, 5 Cir., 1958, 256 F.2d 958; and Ketchum v. United States, 5 Cir., 1958, 259 F.2d 434, certiorari denied 359 U.S. 917, 79 S.Ct. 594, 3 L.Ed.2d 578. The statutory presumption of Section 4744 does not require proof of possession by direct evidence; proof of possession by circumstantial evidence is sufficient. United States v. Pinna, 7 Cir., 1956, 229 F.2d 216.

### IV.

Appellant argues that the court committed reversible error in giving the Government's requested charge that:

"Now the court instructs the jury 'that possession of marihuana in the Southern District of Florida and failure of defendants to produce or-

der form on demand is presumptive evidence that the crime was committed in the Southern District of Florida' and that 'a demand upon the defendants for and their refusal or failure to furnish an order form authorizing a transfer of marihuana as prescribed by Section 4742 is sufficient to show a prima facie presumption that the marihuana is unlawfully possessed.'"

These instructions follow the holdings of this Court in Stone v. United States and Gondron v. United States. See also Harris v. United States, 1959, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597. We see no error in the instructions.

## V.

■ Appellant argues strongly that the evidence obtained through an illegal search is inadmissible in a federal court, regardless of the fact that only state officers were guilty of the misconduct. Appellant distinguishes Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, on the ground that there the Supreme Court was reluctant to interfere in the rules of evidence governing state courts. Since Wolf v. People of State of Colorado, Mr. Justice Warren, for a unanimous court, has said: "It has remained an open question in this Court whether evidence obtained solely by state agents in an illegal search may be admissible in federal court despite the Fourth Amendment." Benanti v. United States, 1957, 355 U.S. 96, 102, 78 S.Ct. 155, 158, 2 L.Ed.2d 126. Appellant argues that in this case especially admissibility of evidence obtained illegally by state officers is contrary to common sense and reason, since Florida has adopted the exclusionary rule for its courts. Weiner v. Kelly, Fla.1955, 82 So.2d 155.

Appellant finds support for his position in Hanna v. United States, 1958, 104 U.S.App.D.C. 205, 260 F.2d 723.[4] The seventh and ninth circuits, however, take the opposite view. Rios v. United States, 9 Cir., 1958, 256 F.2d 173, certiorari granted 350 U.S. 965, 79 S.Ct. 881, 3 L. Ed.2d 833; Elkins v. United States, 9 Cir., 1959, 266 F.2d 588, certiorari granted 361 U.S. 810, 80 S.Ct. 61, 4 L.Ed.2d 58; United States v. Camara, 7 Cir., 1959, 271 F.2d 787.

This Court has adhered consistently to the Weeks rule, except as qualified by the "silver platter doctrine" expressed in Lustig v. United States, 1949, 338 U. S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819. Two recent decisions to this effect are Kendall v. United States, 5 Cir., 1959, 272 F.2d 163 and Huff v. United States, 5 Cir., 1959, 273 F.2d 56. See also Chapman v. United States, 5 Cir., 1959, 272 F.2d 70. In the Huff case, we held:

"Unless and until the Supreme Court rules otherwise, the Circuit is committed to recognition of the doctrine announced in Weeks v. United States, 1914, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652, that

4. "The Solicitor General of the United States has stated that the Government did not file a petition for writ of certiorari in Hanna because it interpreted that decision 'as laying down a rule of evidence which the Court of Appeals has formulated for the District of Columbia under its special supervisory powers.' See letter from J. Lee Rankin to James R. Browning, Clerk of the Supreme Court of the United States, filed in connection with No. 40 Misc., 1958 Term, Rios v. United States [9 Cir., 256 F.2d 173], certiorari granted on April 20, 1959, [350 U.S. 965] 79 S.Ct. 881 [3 L.Ed.2d 833]. Although it is true that the court of appeals decided the issue 'as a matter of sound policy in the administration of ju-

dicial proceedings in the District of Columbia,' the court also decided the question 'on principle' and made it clear that it believed that 'the courts of the United States * * * cannot afford to play the "ignoble part" by themselves permitting the use of unconstitutionally obtained evidence. * * *'" Hanna v. United States, [1958, 104 U.S.App.D.C. 205] 260 F.2d 723, 728. The Court thus believed that it was deciding the question on general principles applicable to all federal courts and not just those applicable to federal courts in the District of Columbia." Kohn, Admissibility in Federal Court of Evidence Illegally Seized by State Officers, 1959 Wash.U. L.Q. 229, 257.

property illegally seized by state officers under no claim of federal authority and without federal participation is admissible in evidence. Fredericks v. United States, 5 Cir., 1953, 208 F.2d 712, 714; Serio v. United States, 5 Cir., 1953, 203 F.2d 576, 578." [273 F.2d 61.]

In this Circuit, therefore, the Court must reject appellant's argument.

Judgment is affirmed.