UNITED STATES of America

v.

James B. BLACKMAN, Cornell R. Jackson.

Crim. No. 149–60.

United States District Court District of Columbia.

May 24, 1960.

Oliver Gasch, U. S. Atty., Fred L. McIntyre, Asst. U. S. Atty., Washington, D. C., for the United States.

J. Franklyn Bourne, Washington, D. C., for respondents.

PINE, Chief Judge.

This is a motion to suppress evidence seized at the time of defendants' arrest. They contend that the arrest was illegal, and that the evidence taken should, therefore, be suppressed.

On the hearing on the motion to suppress, evidence was taken and the following facts adduced: During December 1959 and January 1960 a series of larcenies had been committed in apartment houses in the area of Silver Spring, Maryland, which is adjacent to the District of Columbia. The most recent report of a larceny of this character was made to the Maryland police on January 14, 1960. These police decided to "stake out" this area in an effort to apprehend the thieves, and during the early morning

hours of January 16, 1960, two Maryland police officers were assigned to this duty as plain-clothes men. About 5 a.m. these officers were instructed by their superior, a sergeant, to proceed to the 1900 block of East-West Highway and to watch a 1949 Chevrolet panel truck parked there with the hood raised. The sergeant had just observed this truck, inspected it, and found it empty. When the officers reached this location the truck was gone. They were then advised by the sergeant to find the truck and check it. It matched the description of a truck which previously had been seen in this area at the time the earlier larcenies were committed. Ten or fifteen minutes later the officers observed a truck of this description being driven north on 16th Street one block north of the District line. These officers followed the truck a short distance and stopped it. One of the officers approached the driver, defendant Blackman, and asked for his driver's license and registration card. The other officer, after parking the police car, approached the rear of the truck and called to co-defendant, Jackson, and asked him to step out of the rear of the truck. When Jackson opened the rear door for this purpose both this officer and the sergeant, who had just arrived, saw inside the truck a pink 13 or 14 cu. ft. refrigerator of the type being used in new construction in this area. At this time the sergeant placed the defendants under formal arrest and seized the evidence consisting of the refrigerator and also a washing machine, as disclosed by the indictment. Thereafter the evidence was turned over to the District of Columbia authorities when it was discovered that the property had been removed from an apartment in the District. Defendants were thereupon indicted in this jurisdiction on charges of housebreaking and larceny which are federal offenses.

Under the "local rules of law fashioned by the courts of the District of Columbia",[1] I would have serious

doubt that this arrest could be legally sustained. However, this arrest occurred in Maryland and was made by Maryland police officers, and the Supreme Court has held under such circumstances that the "lawfulness of the arrest without warrant is to be determined by reference to state law."[1] Under Maryland law a person is not arrested "when he is approached by a police officer and merely questioned as to his identity and actions. This amounts to no more than an accosting."[2] The arrest, therefore, under Maryland law did not take place *before* but *after* defendant Jackson had opened the rear door in the process of the accosting, and the officers saw the refrigerator of the type being used in new construction in the area. This, plus the information they previously had, as above set forth, gave them probable cause to believe that a felony had been committed and that defendants had committed it. The arrest which followed would, therefore, appear to be a legal arrest under Maryland law. The subsequent seizure of the refrigerator and washing machine was an incident to this arrest, and the property seized being the fruits of crime should not be suppressed under Maryland law.

However, assuming an illegal arrest, the Supreme Court beginning with Weeks v. United States, 1914, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652, has held that the Fourth Amendment to the Federal Constitution affords no protection against illegal acts of state officers, and evidence illegally obtained by such officers acting alone may be utilized by the federal government in the prosecution of a federal offense. In Byars v. United States, 1927, 273 U.S. 28, 33, 47 S.Ct. 248, 250, 71 L.Ed. 520, the Court held that it did not "question the right of the federal government to avail itself of evidence improperly seized by state officers operating entirely upon their own account." Still later, in Lustig v. United States, 1949, 338 U.S. 74, 78, 69 S.Ct. 1372, 1374, 93

1. Miller v. United States, 357 U.S. 301, 305, 306, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332.

2. Blager v. State, 162 Md. 664, 161 A. 1; Cornish v. State, 215 Md. 64, 137 A.2d 170, 173.

L.Ed. 1819, the Court stated that the crux of the doctrine in the Byars case, supra, "is that a search is a search by a federal official if he had a hand in it; it is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter." And later, in Irvine v. People of State of California, 1954, 347 U.S. 128, 136, 74 S.Ct. 381, 385, 98 L.Ed. 561, the Court held that it had "not seen fit to exclude illegally seized evidence in federal cases unless a federal officer perpetrated the wrong." To me this is explicit and unequivocal, and even though the evidence should be considered illegally seized under "local rules" or any "substantive rule governing federal searches in violation of the Fourth Amendment," Irvine v. People of State of California, supra, 347 U.S. at page 134, 74 S.Ct. at page 384, it should not be suppressed herein, as the seizure was made by state officers acting alone who later turned the evidence over to the District of Columbia authorities on a "silver platter" upon discovery that the property was the fruit of a housebreaking and larceny committed in the District of Columbia.

However, it appears that the United States Court of Appeals for this Circuit has reached a different conclusion in this regard in Hanna v. United States, 104 U.S.App.D.C. 205, 260 F.2d 723, and in White v. United States, 106 U.S.App.D. C. 246, 271 F.2d 829. There the Court held that evidence obtained under similar circumstances was inadmissible. This ruling seems to be based on the opinion of the Supreme Court in Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782. As I read the Wolf opinion, it does not support this view. Instead, it merely states that

the Court would have no hesitation in saying that were a state *affirmatively* to sanction police incursion into privacy it would run counter to the Fourteenth Amendment, and then holds that in a prosecution in a state court for a state crime this Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure.

Indeed, in the Lustig case, supra, 338 U.S. at page 81, 69 S.Ct. at page 1375, decided on the same day as the Wolf case, it is made clear by the dissent, if any clarity was needed, that the previous holding that the federal government had the right "to avail itself of evidence improperly seized by state officers operating entirely upon their own account" was not overruled. There the dissenting opinion, in referring to this holding, states that "[t]his is the rule which the Court reaffirms today." My view that the Supreme Court has not overruled the Weeks decision, reiterated in Byars, Lustig and Irvine, supra, is further reinforced by the fact that seven United States Circuit Courts of Appeals and several United States District Courts in the other circuits, in the cases listed below in a footnote, have continued to adhere to it since and notwithstanding the Wolf decision.[3] The other United States Courts of Appeals have not considered the question since then so far as my research discloses.

With all due deference, I am therefore constrained to say that I do not read the Wolf decision as overruling, expressly or impliedly, the previous pronouncements of the Supreme Court. Indeed, it adhered to them four years later in language above quoted in the Irvine case, supra.

I am controlled by the Supreme Court opinions and the opinions of the Court of Appeals for this Circuit, but, if in my

3. United States v. Benanti, 2 Cir., 1957, 244 F.2d 389, reversed on other grounds, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126; 355 U.S. 801, 78 S.Ct. 6, 2 L.Ed.2d 19; Manning v. United States, 5 Cir., 1960, 274 F.2d 926; Brown v. United States, 6 Cir., 1958, 255 F.2d 400; United States v. Camara, 7 Cir., 1959, 271 F.2d 787; Jones v. United States, 8 Cir., 1954, 217 F.2d 381; Rios v. United States, 9 Cir., 1958, 256 F.2d 173; Gallegos v. United States, 10 Cir., 1956, 237 F.2d 694; United States v. Russo, D.C.1957, 155 F.Supp. 251; United States v. One 1948 Cadillac Convertible Coupe, D.C.1953, 115 F.Supp. 723; United States v. Brown, D.C.1957, 151 F.Supp. 441.

honest judgment they appear to be in conflict, the rule announced by the Supreme Court is the one which I must follow. Although there is dissenting opinion in the Supreme Court supporting the view of the Court of Appeals for this Circuit, as pointed out in the Hanna case, supra, and although there appear to be cases now pending in the Supreme Court on allowance of certiorari which have raised this point,[4] I must decide this case under the law as I find it today, and not on any crystal gazing into the future.

For the reasons above stated the motion to suppress will be denied.

4. Rios v. United States, 1959, 359 U.S. 965, 79 S.Ct. 881, 3 L.Ed.2d 833; El-

kins v. United States, 1959, 361 U.S. 810, 80 S.Ct. 61, 4 L.Ed.2d 58.